**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KATHRYN COPELAND,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-0585-O-BP** |
| | § | |
| **WEINSTEIN MANAGEMENT CO., INC., *et al.*,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Emergency Application for Narrow Temporary Restraining Order ("TRO") (ECF No. 3) that *pro se* Plaintiff Kathryn Copeland filed on May 13, 2026. After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DENY** Copeland's request for a TRO.

## I. BACKGROUND

Copeland sues Weinstein Management Co., Inc. ("Weinstein"), WMCI Dallas X LLC ("WMCI"), Allison Weinstein, Lile Benaicha, Philadelphia Indemnity Insurance Company ("Philadelphia"), and Amye Brochstein (collectively "Defendants"). ECF No. 1 at 11-13. She claims that an environmental testing company declared her apartment unfit for human occupancy due to mold contamination on June 18, 2025. *Id.* at 15. On June 27, 2026, she submitted an "ADA/FHA accommodation request for written communications, comparable housing during remediation, and licensed mold remediation in accordance with applicable code." *Id.* She contends that despite her repeated requests and notification of her

disabilities, Defendants refused to comply with their legal requirements. *See generally* ECF No. 1.

Copeland asserts claims under the Fair Housing Act ("FHA") alleging Defendants failed to accommodate her documented disabilities and interfered with her when she exercised her FHA rights. *Id.* at 36. She also asserts claims under the Americans with Disabilities Act ("ADA"), alleging Defendants "interfered with [her] ADA rights." *Id.* at 38. Copeland seeks a TRO, actual and compensatory damages, punitive damages, declaratory judgment, attorney fees, and costs. *Id.* at 38-42.

While Copeland's underlying claims assert causes of action under the FHA and ADA, it seems from her present Motion for TRO that she seeks this Court's intervention in related pending state court litigation. ECF No. 3 at 13 (arguing that without a TRO, Copeland will lose access to state court relief). The TRO request the Court to prohibit amicus curiae filings in *Kathryn Copeland v. Kelly Decker*, Cause No. 236-363132-25 in the 236th Judicial District Court of Tarrant County ("the Decker action"). *Id.* at 10; ECF No. 1 at 31. In her Motion, Copeland asks this Court to prevent persons and entities not party to this case or the underlying state court case from filing amicus pleadings in that state court case. ECF No. 3 at 10. But if Copeland objects to what unrelated parties file in the underlying state court case, she must make objections in that state court, not here.

## II. LEGAL STANDARDS

### A. TRO

A TRO is "extraordinary relief and rarely issued." *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999). A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires that the party seeking such

relief establish the same four elements for obtaining a preliminary injunction. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2001).

In the Fifth Circuit, the four prerequisites for obtaining preliminary injunctive relief, including a TRO, are:

> (1) [A] substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The party seeking injunctive relief must clearly carry the burden of persuasion on all four *Callaway* prerequisites to prevail. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Given the extraordinary nature of preliminary injunctive relief, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.* (citing *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Callaway*, 489 F.2d at 576)).

It is also well settled that the issuance of a preliminary injunction freezes the status quo and is intended "to preserve the relative positions of the parties until a trial on the merits can be held." *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997). Preliminary injunctions "seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned." *Id.*

### B. *Younger* abstention

Federal courts have a "virtually unflagging obligation" to decide cases within their jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "[T]he pendency of an action in [a] state court is no bar to proceedings concerning

the same matter in the federal court having jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (brackets in original). However, under the abstention doctrine explained in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, courts recognize "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint*, 571 U.S. at 72. *Younger* abstention applies in three "exceptional" circumstances: "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73 (internal quotation marks omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367-68 (2013)). Federal courts have a duty to ensure abstention under *Younger* would not be proper for the cases before them and may raise the issue sua sponte. *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003); *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999).

## III. ANALYSIS

### A. Abstention is proper in this case.

The Court should abstain from exercising subject matter jurisdiction over the amicus filings in the ongoing state case under the *Younger* doctrine. *See Younger,* 401 U.S. 37; *Morse v. Fed. Nat'l Mortg. Ass'n*, No. 4:18-cv-39-ALM-CAN, 2019 WL 1177989, at *5-7 (E.D. Tex. Feb. 12, 2019), *rec. adopted*, 2019 WL 1168530 (E.D. Tex. Mar. 13, 2019). *Younger* requires abstention where "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457

U.S. 423, 432 (1982)) (analyzing two of the three elements in a 42 U.S.C. § 1983 case); *Murphy*, 168 F.3d at 737 n.1 (authorizing *sua sponte* abstention).

Copeland seeks relief relating to amicus filings in a related state court case. ECF No. 3 at 10. She argues that these non-party filings violate her rights and access to courts. *Id.* at 13. But even if that were true, this Court should not rule on the validity of particular filings in an ongoing state court case.

The Court should abstain from exercising its jurisdiction to consider Copeland's claims regarding the ongoing state case because the claims meet all three conditions for *Younger* abstention. Granting a TRO in this case would interfere with the state court case because Copeland explicitly requests that the Court prevent third parties from making particular submissions in state court proceedings. This is a matter best left to the discretion of the district court judge presiding in the state action. Enforcing and managing state court judgments and proceedings involve important state interests under *Younger*. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 2, (1987) ("This Court's precedents[] repeatedly have recognized that the States have important interests in administering certain aspects of their judicial systems. These include enforcing the orders and judgments of the States' courts.").

Finally, the remedies that are available to object to or even appeal rulings concerning amicus filings in the state case affords Copeland an adequate opportunity to litigate her claims. *See Middlesex Cty.*, 457 U.S. at 435. As a result, the Court should abstain from exercising its jurisdiction under *Younger*. On the facts presented here, and because Copeland has not shown any reason that abstention would be inappropriate, the Court should therefore deny the TRO.

**B. Copeland notified Defendants as Fed. R. Civ. P. 65(b)(1) requires.**

The Federal Rules of Civil Procedure govern the issuance of a TRO. A court may enter a TRO with or without notice. The rules only allow for issuance of a TRO without notice if:

> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)

Here, Copeland attested that she notified Defendants of the requested TRO via email on May 14, 2025. *See* ECF No. 3 at 17. Accordingly, it appears that Copeland satisfied Rule 65(b)(1)'s notice requirement for the issuance of a TRO.

**C. Even if the Court need not abstain, Copeland's TRO request does not meet the legal requirements.**

The Court should deny Copeland's request for a TRO because she has not established the four prerequisites that the Fifth Circuit requires.

1. She does not show a substantial likelihood of success on the merits.

Copeland argues that the nonparty filings in state court violated 42 U.S.C. § 12203 (the ADA's anti-retaliation and coercion provision) and 42 U.S.C. § 3617 (the FHA's anti-harassment and anti-retaliation provision). ECF No. 3 at 11. She argues that these violations constitute conduct intended to chill or impede her rights and therefore a TRO is appropriate. *Id.* at 11-12. But she does not explain how any of her allegations are substantially likely to succeed on the merits. Therefore, even if the Court did not need to abstain from hearing her TRO, Copeland has not shown that she is substantially likely to

succeed on the merits of the case pending in this Court. Therefore, granting a TRO is not appropriate.

2. There is no clear showing of irreparable harm.

To satisfy the second element of the preliminary injunction standard, Copeland must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Injuries are irreparable only when they "cannot be undone through monetary remedies." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008).

Copeland claims that monetary damages will not undo the harm of her loss of access to courts through party interference. ECF No. 3 at 13. She argues these violations of civil rights statutes and weaponization of state-court calendar cannot be remediated by money damages. *Id.*

Even if these arguments support a showing of irreparable harm, the Court still should find that entry of a TRO is inappropriate. Irreparable harm alone is insufficient to support equitable relief because "the likelihood of success is the 'main bearing wall' of the test," and here, Copeland has not met this requirement for her claims. *Belknap v. Bank of Am., N.A.*, No. CIV.A. G-12-198, 2012 WL 3150271, at *4 (S.D. Tex. Aug. 1, 2012).

3. The balance of harms does not favor Copeland.

The third element requires Copeland to show that the threatened injury outweighs any harm the injunction might cause. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). Copeland contends that the harm she faces is significant, and the burden on the Defendants is zero because they have no interest as non-parties in the state court actions. ECF No. 3 at 13-14. But she does not support this conclusory statement with facts

or legal authorities. She has made numerous arguments supporting her claim but does not adequately explain how the objects of the TRO would be harmed if the Court restrained them from exercising their rights in the state court. Thus, Copeland does not meet her burden on the third element of the preliminary injunction standard. *See Thompson v. Hughes, Watters & Askanase, LLP*, No. 3:13-cv-429-G-BH, 2013 WL 705123, at *3 (N.D. Tex. Jan. 31, 2013), *rec. adopted* 2013 WL 705883 (N.D. Tex. Feb. 27, 2013).

4. The public interest does not support issuance of a TRO.

The final element requires a showing that granting the injunction does not disserve the public interest. *Winter*, 555 U.S. at 20. Courts are more likely to both grant and withhold injunctive relief in furtherance of the public interest than when merely private interests are involved. *Yakus v. United States*, 321 U.S. 414, 441 (1944). Here, Copeland merely asserts in conclusory fashion that the public has a substantial interest in the enforcement of federal civil rights statutes. ECF No. 3 at 14. Such an unsupported conclusory assertion does not provide a sufficient basis to find that a TRO in this case would serve the public interest. Therefore, Copeland has not met his burden on the fourth element of the preliminary injunction standard.

## IV. CONCLUSION

The Court should abstain from exercising subject matter jurisdiction over Copeland's request for a TRO under the doctrine of *Younger* abstention. Even if it did not need to do so, a TRO still would be inappropriate because Copeland has not met the legal requirements for issuance. Therefore, the undersigned **RECOMMENDS** that Chief Judge O'Connor **DENY** Copeland's request for a TRO. ECF No. 3.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc) , superseded by statute 28 U.S.C. § 636(b)(1) (extending the deadline to file objections from ten to fourteen days).

**SIGNED** on July 16, 2026.

Hal R. Ray, Jr.
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE